IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TOP TOBACCO, L.P. and )
REPUBLIC TOBACCO L.P., )
 )
      Plaintiffs, )
 )
 )
  vs. ) Case No. 06 C 950
 )
NORTH ATLANTIC OPERATING )
COMPANY, INC. and NATIONAL )
TOBACCO COMPANY L.P., )
 )
      Defendants. )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

    Top Tobacco, L.P. and Republic Tobacco L.P. (together, Top Tobacco), owners of the trademark TOP for tobacco products, sued North Atlantic Operating Company, Inc. and National Tobacco Company L.P. (together, North Atlantic) for trademark infringement, unfair competition, and dilution under the Lanham Act, and related state law claims arising out of North Atlantic's use of the phrase "Fresh-Top Canister" on one of its tobacco products. The Court granted North Atlantic's motion for summary judgment and thereafter granted its motion for attorneys' fees pursuant to the Lanham Act, 15 U.S.C. § 1117(a), which allows the imposition of reasonable attorneys' fees to the prevailing party in "exceptional cases." *Top Tobacco, L.P. v. North Atlantic Operating Co., Inc.*, No. 06 C 950, 2007 WL 118527 (N.D. Ill. Jan. 4, 2007); *Top Tobacco, L.P. v. North Atlantic Operating Co., Inc.*, No. 06 C 950, 2007 WL 1149220 (N.D. Ill. Apr. 17, 2007). North Atlantic has submitted a fee petition seeking

$1,432,813.35.[1] Top Tobacco objects to the petition, claiming that North Atlantic is not entitled to any fees or, in the alternative, is entitled to a substantially reduced award. For the following reasons, the Court awards North Atlantic attorneys' fees in the amount of $1,042,484.60

**Background**

The facts of this case are fully set forth in the Court's January 4, 2007 Memorandum Opinion and Order. *Top Tobacco, L.P. v. North Atlantic Operating Co., Inc.*, No. 06 C 950, 2006 WL 118527 (N.D. Ill. Jan. 4, 2007). Top Tobacco and North Atlantic both manufacture and sell roll-your-own (RYO) cigarette tobacco and rolling papers. Top Tobacco sells its products under the TOP brand, and North Atlantic sells it products under the ZIG-ZAG brand. Top Tobacco brought five claims based on North Atlantic's use of the term "Fresh-Top Canister": a claim under the Lanham Act for infringement of a registered trademark (Count 1), a federal dilution claim (Count 2), a Lanham Act unfair competition claim (Count 3), a claim for violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act (ICFA) (Count 4), and a state law unfair competition claim (Count 5). The Court granted summary judgment in favor of North Atlantic on all counts.

Under the Lanham Act and ICFA, a court may award reasonable attorneys' fees to a prevailing party if the losing party's conduct can be regarded as oppressive. 15 U.S.C. §

---

[1] North Atlantic originally sought $1,444,273.35 in attorneys' fees and expenses. On August 28, 2007, the Court ordered North Atlantic to provide a summary of the fees sought broken down by time keeper, rate, and hours billed. The summary provided by North Atlantic does not include time for certain time keepers, for example senior paralegal Donna Gasiorowski, and seeks $11,460 less than its original fee petition. The Court presumes that North Atlantic no longer seeks fees for the time keepers it did not include on the summary document the Court ordered it to produce. In addition, Top Tobacco has not objected to the expenses sought by North Atlantic, which total $14,170.85.

1117(a); 815 ILCS 505/10a(c); *Door Sys., Inc. v. Pro-Line Sys., Inc.*, 126 F.3d 1028, 1029-30, 1032 (7th Cir. 1997) (citations omitted). The Seventh Circuit has held that a suit is oppressive if "it lacked merit, had elements of an abuse of process claim, and plaintiff's conduct unreasonably increased the cost of defending against the suit." *S Indus., Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 627 (7th Cir. 2001). The Court determined that Top Tobacco's conduct was oppressive and an award of attorneys' fees was warranted because of the sheer weakness of Top Tobacco's case, its inconsistent positions in the USPTO and before the Court, and its baseless litigation positions that needlessly increased the time and expense needed to defend the case. *Top Tobacco, L.P. v. North Atlantic Operating Co., Inc.*, No. 06 C 950, 2007 WL 1149220 (N.D. Ill. Apr. 17, 2007).

In granting the motion for attorneys' fees, the Court admonished North Atlantic that its fee petition must be reasonable and reflect the exercise of "billing judgment." *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The Court also opted out of the provisions of Local Rule 54.3 to a significant extent, as they are quite cumbersome and, in some cases, lead to undue delay in a court's consideration of a fee request. On June 12, 2007, the Court ordered North Atlantic to produce unredacted billing records, which North Atlantic provided on June 28, 2007. Top Tobacco filed a supplemental brief regarding the unredacted billing records that the Court has considered as a surreply. North Atlantic filed a response to Top Tobacco's surreply, which the Court has also considered.

**Discussion**

**1.     Billing rates**

    **a.     Attorneys**

The reasonable hourly rate for an attorney is the market rate for his services. *See Fogle v. William Chevrolet/Geo, Inc.*, 275 F.3d 613, 615 (7th Cir. 2001). "An attorney's market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Spegon v. Catholic Bishop of Chic.*, 175 F.3d 544, 555 (7th Cir. 1999) (citations omitted). There is a presumption that an attorney's actual billing rate is the best measure of the market rate for his services. *See People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996). An attorney seeking fees has the burden of proving his market rate, but once he does, the opposing party bears the burden of showing why the hourly rate should be lower. *Spegon*, 175 F.3d at 554-55.

Top Tobacco does not contest that the rates cited by North Atlantic are the rates actually charged by its attorneys at Kirkland & Ellis (K&E). Moreover, North Atlantic has submitted invoices demonstrating that these are the rates it was charged. Top Tobacco objects, however, to K&E's rates, contending that they are excessive at every level. North Atlantic does not deny that its attorneys' rates are at the very high end of the Chicago market. Indeed, they are likely higher than those charged by most Chicago intellectual property attorneys with the same number of years of experience as K&E's counsel. The rates are also significantly higher, across all attorney levels, than those charged by Top Tobacco's attorneys. By itself, however, this is insufficient to rebut the presumption that an attorney's actual billing rate is the best measure of the market rate for his services. As the Seventh Circuit has said, a court cannot depart from the

presumptive rate merely because it can identify a different average rate in the community. *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1151 (7th Cir. 1993).

The Seventh Circuit has also stated, however, that in determining whether an attorney's higher-than-average regular rate is appropriate, a court may take into account whether the attorneys "did not display the excellence or achieve the time savings, implied by their higher rate." *Id.* There is no question that K&E's work in this case reflected a level of skill commensurate with its attorneys' high rates. It is equally apparent, however, that K&E did not achieve the time savings implied in its well-above-average hourly rates. As Top Tobacco points out, K&E out billed Top Tobacco's attorneys by a sizeable margin. K&E spent significantly more time on virtually every aspect of the case than did Top Tobacco's attorneys, who billed at much lower hourly rates. Overall, K&E billed 3,679.25 hours compared to 2,574.1 hours by Top Tobacco's counsel. In other words, K&E billed 30% more time to this case than its counterparts at Neal Gerber and Grippo & Elden. Some variation in this regard is to be expected, and some may be attributable to the degree of thoroughness of the work of the K&E attorneys (though the Court does not intend to suggest that Top Tobacco's attorneys did a less than thorough job). But even taking those factors into account, the Court is constrained to conclude that Top Tobacco has rebutted the presumption that K&E's regular rates are the market rate for purposes of the present inquiry. The Court will therefore adopt the hourly rates charged by Top Tobacco's attorneys, which are in line with those charged by other large law firms in similar types of cases in Chicago.     **b.    Paralegals**

The reasonable hourly rates for paralegals are also the market rates for their services. *Spegon*, 175 F.3d at 556. North Atlantic seeks fees for its paralegals' time at rates of between

$135 and $175 per hour. Top Tobacco argues that these rights are not reasonable, and proposes that a reasonable rate for K&E's paralegals would be $115 per hour.

Top Tobacco cites this Court's decision in *Entertainment Software Ass'n v. Blagojevich*, No. 05 C 4265, 2006 WL 3694851 (N.D. Ill. Aug. 9, 2006), finding that paralegal rates of $100 to $110 per hour are reasonable, as support for its position that a rate of no more than $115 per hour would be reasonable in this case. The Court in *Entertainment Software*, however, did not limit the rate for paralegals to $100 to $110 per hour. Rather, those were the rates actually charged by the plaintiff's law firm in that case; the Court found that those rates were reasonable. Here, the Court finds that the rates charged by K&E's paralegals are reasonable. Because North Atlantic no longer seeks fees for its senior paralegal, Ms. Gasiorowski, the Court need not address what her reasonable rate may be. *See infra*, n.1.

  c. **Summer associates**

North Atlantic seeks an hourly rate of $185 per hour for K&E's "summer associates," *i.e.*, law students working at the firm for the summer, who worked on this case. Top Tobacco counters that an hourly rate of no more than $115 per hour would be reasonable. The Court agrees that $185 per hour is an unreasonably high rate for work performed by students who are still in law school and thus do not have a law license. According to the information provided by K&E, a first-year litigation associate billed out at $240 per hour in 2006. K&E's summer associate rate is discounted from its first-year associate rate by slightly less than 25%. The Court does not believe that this discount accurately reflects the value of an attorney's admission to the bar or the additional experience a first-year associate has over a law student going into her second or third year. Nor does it accurately reflect summer associates' significant inefficiencies

6

or, just as importantly, the need for the firm to bill additional attorney time to properly supervise the summer associates. The Court finds that an hourly rate of $125 is reasonable for the work performed by K&E's summer associates.

### d. Other time keepers

Top Tobacco objects to North Atlantic's inclusion of time billed by "Bibliographical Research," "Expert Witness Research," K&E's library, and its investigator Thomas Gallo. Top Tobacco states that K&E billed 10.25 hours for these time keepers, though the Court's review of K&E's billing records shows that they collectively billed 47.75 hours (0.5 hours for "Business/Ind Research," 10.25 hours for Mr. Gallo, 22.25 hours for bibliographical research, and 14.75 hours for "Expert Witness Research"). Though the amount of time spent by these time keepers (whoever they are) appears reasonable for the tasks described, the Court has no way of knowing if their rates are reasonable. Just as attorneys may increase their billing rates with additional years of experience, it is safe to assume that librarians and investigators do the same thing. But North Atlantic has not provided any information regarding these time keepers' backgrounds or level of experience (or even their names, apart from Mr. Gallo). Mr. Gallo bills out at $295 per hour, and K&E bills its librarians out at $185 per hour. Without any information to back up these rates, North Atlantic has not met its burden of proving that they are reasonable. The Court reduces Mr. Gallo's rate to $125 per hour and the librarians' rates to $90 per hour.

## 2. Hours

The party seeking fees has the burden of proving the reasonableness of the hours worked by counsel. *Spegon*, 175 F.3d at 555. North Atlantic contends that the number of hours claimed is reasonable based on the amount of work required to defend this case, and is in line with the

American Intellectual Property Lawyer's Association's estimates for what it costs to litigate a trademark infringement matter of this magnitude. North Atlantic has reduced the time for which it seeks fees by eliminating time billed in connection with the parties' mediation, the claims or counterclaims brought in a separate case between the parties pending before Judge Der-Yeghiayan, attorneys who "second chaired" depositions or court hearings, attorneys new to the case getting up to speed, and the appeal of this matter.

Top Tobacco raises several objections to the fees claimed by North Atlantic. First, they point out that the many of K&E's time entries consist of block billing, *i.e.*, the allocation of multiple tasks to one time entry. Top Tobacco is correct that block billing makes it difficult for the Court to determine whether K&E attorneys spent a reasonable amount of time on each of the listed tasks. Top Tobacco proposes that the Court disallow the block billed time entries, thereby reducing the fee award to $335,742. Indeed, the Court has the discretion to do just that. *See Harper v. City of Chicago Heights*, 223 F.3d 593, 605 (7th Cir. 2000) ("When a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage."). But in a case this large and complex, where attorneys perform multiple tasks on any given day, it is not surprising that many of the attorneys recorded their time in this fashion. Indeed, Top Tobacco's counsel, who undoubtedly would have sought fees had they prevailed, did exactly the same thing.

That said, several of K&E's block billed entries include time for work that is not compensable. For example, several entries include time spent working on the parties' mediation and the case pending before Judge Der-Yeghiayan. Because the Court cannot determine what

portion of these entries relate to work that is not compensable, each of these entries is disallowed in its entirety.[2] The Court, therefore, reduces the fee award by $40,113.75.

Top Tobacco also objects to the number of hours K&E spent defending the case. In particular, it takes issue with the number of hours K&E spent on discovery, case management and strategy, and defending Top Tobacco's motion for a preliminary injunction.[3]

North Atlantic incurred fees characterized as discovery-related of $646,955, and Top Tobacco incurred fees of $352,764. Top Tobacco attributes part of the disparity to its belief that North Atlantic used the discovery process in this case to obtain information to be used in the separate case pending before Judge Der-Yeghiayan. North Atlantic denies that this is the case. The Court need not attempt to get behind North Atlantic's motives in this regard. This case involved extensive oral and written discovery, as well as the necessity to search for records in Top Tobacco's prior proceedings before the USPTO and undertake a factual investigation of the likelihood of confusion between the parties' products. Top Tobacco's attorneys did not spend time on tasks such as this. Moreover, as discussed in the Court's order finding that this is an exceptional case under the Lanham Act, "when witnesses dissemble as Levin did, it needlessly increases the costs of defending a suit, one of the factors the Seventh Circuit said courts may consider when deciding whether a case is exceptional. *See S Indus.*, 249 F.3d at 627." *Top*

---

[2] The disallowed time entries related to the parties' mediation are set forth in Exhibit C to Top Tobacco's brief in opposition to the fee petition. The disallowed entries related to the case before Judge Der-Yeghiayan are Ms. McCue and Mr. Garcia's November 13, 2006 time entries totaling 20 hours, Ms. Holubar's entry on April 27 2006 for 3.25 hours, and Ms. Swits' entry on September 29, 2006 for 6 hours.

[3] Top Tobacco does not object to the time K&E spent preparing pleadings, summary judgment papers, and attending court hearings. Resp. Brief at 13.

*Tobacco, L.P. v. North Atlantic Operating Co., Inc.*, No. 06 C 950, 2007 WL 1149220, *5 (N.D. Ill. April 17, 2007). In any event, to the extent that the hours spent on discovery were unreasonable, the Court has addressed the issue by reducing K&E's hourly rates. Were the Court also to reduce the compensable time, it would in effect be double-counting the same factor.

Top Tobacco also contends that the amount of time K&E spent on case management and strategy is not reasonable. North Atlantic seeks fees of $236,493; Top Tobacco spent $153,766. Included in this amount is 113 hours K&E spent on organizing correspondence and pleadings that resulted in fees of $40,796.25. This amounts to more than 12 hours per month from the time the case was filed through the Court's ruling on summary judgment; in other words, approximately a quarter of a paralegal's time was spent organizing correspondence and pleadings for this one case. The Court agrees that the amount of time spent on this task seems excessive. The Court reduces the fees compensable for organizing correspondence and pleadings to $20,000.

Top Tobacco also argues that 37.50 hours spent searching deposition transcripts for key terms is unreasonable. The Court disagrees. The parties took 20 depositions in this case, many of which were compressed into short periods of time. Having a paralegal search prior transcripts for key terms is a reasonable way to prepare for upcoming depositions. These tasks are not merely clerical, as Top Tobacco contends, but in the Court's experience, the very sort of task that attorneys generally assign to paralegals. Moreover, 37.5 hours does not seem like an unreasonable amount of time to spend on this task. Top Tobacco makes no other specific objections to the fees incurred for case management and strategy other than those described

above. The Court finds that the rest of the fees incurred in this category are reasonable.

Top Tobacco objects to the 132.5 hours K&E spent defending Top Tobacco's motion for preliminary injunction. It points out that its lawyers spent only 56.9 hours on the motion. Top Tobacco points to no K&E time entries that are duplicative, nor to any particular tasks that, it claims, took the attorney an unreasonably long time. In any event, to the extent that the time spent on the preliminary injunction hearing was excessive, the Court has addressed this issue by reducing K&E's hourly rates.

Top Tobacco objects to North Atlantic's inclusion of 376 hours billed by paralegals that Top Tobacco describes as having been spent on clerical work that is not compensable. Top Tobacco is correct that a party cannot recover attorneys' fees for work that is clerical or secretarial in nature. *See Delgado*, 2006 WL 2147695, *2. But the supposed clerical tasks are the type of tasks that litigation paralegals routinely do and for which clients are billed. For example, K&E had its paralegals, among other things, search deposition transcripts for relevant information, prepare binders for depositions, assist with document production, and order hearing transcripts. Though such tasks would likely not be reasonable if undertaken by attorneys, they are reasonable tasks to be done by paralegals. Moreover, as North Atlantic points out, Top Tobacco's attorneys billed their clients for exactly the same paralegal tasks. The Court finds that the time spent on these tasks was reasonable.

### 3.     Summary

North Atlantic seeks fees and limited expenses in the amount of $1,432,813.35. The Court reduces this award as follows: $311,185 due to the adjustment in the rates of K&E's attorneys; $13,725 due to the adjustment in the rates of K&E's summer associates; $5,305 due to

11

the adjustment in the rates of other K&E research personnel; $40,113.75 for block-billed time entries that included work that is not compensable; and $20,000 for excess time spent organizing correspondence and pleadings. The Court awards North Atlantic attorney's fees and expenses in the amount of $1,042,484.60.

## Conclusion

For the reasons stated above, the Court grants defendants' fee petition in part [docket no. 155]. The Court awards defendants attorney's fees and expenses of $1,042,484.60.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: September 6, 2007